IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff*,<br><br>v.<br><br>SHAWN JACKSON,<br><br>   *Defendant*. | Criminal No. ELH-13-0629<br>ELH-18-0017 |

### MEMORANDUM

This Memorandum resolves a motion for compassionate release filed by Shawn Jackson, who is self-represented. In 2018, Jackson was one of 19 defendants charged in a serious drug trafficking case. ECF 157. Pursuant to a Plea Agreement (ECF 428), he entered a plea of guilty on March 4, 2019 (ECF 432), to the offense of conspiracy to distribute one kilogram or more of heroin. The Court sentenced Jackson on July 31, 2019, to a term of 108 months in prison. ECF 626. He was also sentenced to a concurrent term of two years of incarceration for a violation of supervised release in the case of *United States v. Shawn Jackson*, ELH-13-629. *Id.* at 294. He appears to have credit dating to September 12, 2017. ECF 624 at 1.

Jackson is currently serving his sentence at FCI Coleman Low in Florida. The government did not specify his projected release date.

Jackson's request for compassionate release was denied by the Warden on May 18, 2020. ECF 696; ECF 707-1. Thereafter, on June 3, 2020, Jackson moved for compassionate release or for a sentence reduction (the "Motion"). ECF 696. The government opposes the Motion (ECF 717) and has submitted exhibits docketed collectively at ECF 717-1. No reply was filed. The Office of the Federal Public Defender has declined to file a supplement for Jackson. ECF 707.

## I. Factual Summary

The defendant was convicted of conspiracy to distribute more than one kilogram of heroin from March of 2017 through January of 2018. Jackson was a leader of the "Transformers" heroin shop that operated in an area of Baltimore that is plagued by violence. The investigation into Jackson and the drug trafficking organization involved pole camera surveillance of the drug activities as well as the authorized interception of hundreds of conversations.

On September 12, 2017, a search warrant was executed at Jackson's hotel room. Investigators approached Jackson, who then began running as he tossed a black bag that contained 340 grams of heroin. During the search of Jackson's hotel room, investigators recovered an additional 250 grams of heroin; $464,067 in U.S. currency; five cellular telephones; and drug packaging and processing materials.

## II. Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only

upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Section 3582(c) is titled "Modification of an imposed term of imprisonment." Under § 3582(c)(1)(A), the court, upon motion of the Director of BOP or the defendant, upon

exhaustion of administrative rights, may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:[1]
>
> (A) Medical Condition of the Defendant.—
>
>    (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and

---

[1] Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)  **Suffering from a serious physical or medical condition,**

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

Compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3

(W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).

If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider whether the defendant remains a danger to the community under 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2) and cmt. n.1. And, the Court must also consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827.

### III. COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[3] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

---

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

6

That said, the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories…." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available.  *Id.* (citation omitted).

The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020).  For a significant period of time, life as we have known it came to a halt.  Although many businesses have reopened, many are subject to substantial restrictions.   And, in view of the recent resurgence of the virus, some businesses are again facing closure.

As of August 3, 2020, COVID-19 has infected about 4.6 million Americans and caused over 150,000 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed August 3, 2020).  Unfortunately, there is currently no vaccine, cure, or proven effective treatment that is available. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

However, on June 25, 2020, to reflect the most recently available data, the CDC revised its guidance as to medical conditions that pose a higher risk of severe illness from COVID-19. Then, on July 17, 2020, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The list of factors that might increase the risk includes cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id*., *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently,

8

correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial and extensive measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 717 at 10-12. As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Moreover, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home

confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Nevertheless, as with the country as a whole, the virus persists in penal institutions.[4] As of July 7, 2020, the BOP reported that 1,992 inmates and 160 BOP staff currently tested positive for COVID-19; 5,137 inmates and 603 staff have recovered; and 94 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed July 7, 2020).

### IV. Discussion

The defendant is 31 years old. His age is not a basis for relief. He has seven minor children with four mothers. ECF 624, ¶¶ 56-59. But, he does not claim that their caregivers are incapacitated in any way. Thus, the defendant is not eligible for compassionate release on the basis of family circumstances. *See* U.S.S.G. § 1B1.13 cmt. n.1(C).

---

[4] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

Pursuant to the position of the DOJ, the defendant's medical condition, asthma, may constitute "extraordinary and compelling" circumstances that would make him eligible for relief. *See* U.S.S.G. § 1B1.13 and cmt. n.1(A)-(B).

The government obtained the defendant's medical records form the Bureau of Prisons for 2019 and 2020, and his history of asthma is well documented.  ECF 717-1.  Thus, the defendant's asthma *might* constitute an "extraordinary and compelling reason."  However, because the defendant poses a danger to the community, his medical condition does not render him eligible for relief.

The underlying facts were recounted, *supra*.  Moreover, this is Jackson's third conviction for distributing heroin and his second federal conviction.

On May 29, 2011, the defendant was arrested and later convicted in the State of Maryland for conspiracy to distribute heroin.  He was sentenced to 3 years of incarceration, of which 2 years, 9 months, and 17 days were suspended.  He was then placed on 3 years of probation.  ECF 624, ¶ 29.  On May 15, 2013, Jackson was charged with conspiracy to distribute and possession with intent to distribute heroin in the United States District Court for the District of Maryland, ELH-13-0269.  Jackson pled guilty before Judge William D. Quarles, Jr. (ECF 107) and was sentenced by him to 60 months of incarceration and 4 years of supervised release.  ECF 162.  He violated his supervised release by committing this second federal offense.  Notably, the prior prosecution and sentence did not deter the defendant from continuing to engage in drug trafficking.

Taken as a whole, the factors under 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a) weigh in favor of denial of the Motion.

An Order follows.


Date: August 3, 2020              /s/
                                  Ellen L. Hollander
                                  United States District Judge